## Case No. 9,207.

### The MARY E. PEREW.

### MILLS v. The MARY E. PEREW.

[15 Blatchf. 58; 6 Reporter, 293; 8 Ins. Law J. 59; 10 Chi. Leg. News, 371.] [1]

Circuit Court, N. D. New York. July 12, 1878.

MARINE INSURANCE — ABANDONMENT — TITLE DERIVED THEREUNDER — RELIEF EXPEDITION — FUNDS CONTRIBUTED THEREFOR — MARITIME LIEN—REPAIRS.

P., the sole owner of a vessel, procured marine insurance on her in four insurance companies, for an aggregate sum of $11,000, on account of himself, for one year. The policies valued the vessel at $13,500, and contained these clauses: "No abandonment, in any case whatever, even when the right to abandon may exist, shall be held or allowed as effectual or valid, unless it shall be in writing, signed by the insured, and delivered to the said company, or to their authorized agent, nor unless it shall be efficient, if accepted, to convey to and vest in the said insurance company an unincumbered and perfect title to the subject abandoned; and the valuation of said vessel, expressed in this policy, shall be considered the value in adjusting losses covered by this policy." "It is also agreed, that this policy shall become void, if any other insurance is or shall be made upon the vessel interest hereby insured, which, together with this insurance, shall exceed the sum of $11,000." The vessel was wrecked. P. paid 5-27ths of the contribution of the vessel in general average to the expenses of an unsuccessful expedition for her relief, the companies paying 22-27ths, under a clause in the policies. Thereafter P. gave to the companies notice of abandonment, and, two months after that, he signed and delivered to each company a paper, saying: "I, P., owner of the schooner M. E. P., insured under policy" of such a number, in such a company, for so much, of such a date, "do hereby abandon to said company all right, title, and interest possessed by me in said vessel, tackle, and apparel, under said policy, notice of said abandonment having been given" at such a date. The companies accepted the abandonment, and paid P., as for a total loss, $11,000, and afterwards, at their own expense, saved the vessel, and procured repairs to be made to her. On a libel against her for such repairs, P. claimed to be the owner of 5-27ths of her, and answered setting up that the claim was not a lien on his share of the vessel: *Held*, that P. had no interest in the vessel when the libel was filed, and was not entitled to defend the suit.

[Cited in The Two Marys, 10 Fed. 925; The Manitoba, 30 Fed. 131.]

Appeal from the district court of the United States for the Northern district of New York.]

---

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission. 6 Reporter, 293, contains only a condensed report.]

[This was a libel for repairs by Robert Mills and others against the Mary E. Perew. From the decree of the district court in favor of the libellants the claimant appeals.]

Williams & Potter, for libellants.
Sprague, Gorham & Bacon, for Perew.

BLATCHFORD, Circuit Judge. The libellants, ship carpenters at Buffalo, filed their libel in the district court against the schooner Mary E. Perew, to recover the sum of $4,021.93, with interest from October 11th, 1877, for repairs made to said schooner at Buffalo, in September and October, 1877, claiming a lien on the vessel for the value of such repairs, under the laws of the state of New York. Frank Perew, claiming to be the owner of 5-27ths of the vessel, put in an answer to the libel, setting up a defense to the claim as respects his interest in the vessel, and praying for a decree that such claim is not a lien on the share of the vessel belonging to him, and that it is a lien only upon the other interests in the vessel, and that the libel be dismissed as to his interest.

In July, 1875, Perew, being sole owner of the vessel, procured an insurance on her in each one of four several insurance companies, the sums severally insured by them being $3,500, $3,500, $2,000 and $2,000. One policy is a specimen of the four. The insurance is on account of Perew, and insures the sum named, on the vessel, for one year. The policy states that the vessel is valued at $13,500, without any further account to be given by the assured to the assurers for the same. The insurance covers marine disasters in the navigation of the upper lakes. The policy contains these clauses: "No abandonment, in any case whatever, even when the right to abandon may exist, shall be held or allowed as effectual or valid, unless it shall be in writing, signed by the insured, and delivered to the said company, or to their authorized agent, nor unless it shall be efficient, if accepted, to convey to and to vest in the said insurance company an unincumbered and perfect title to the subject abandoned; and the valuation of said vessel, expressed in this policy, shall be considered the value in adjusting losses covered by this policy." "It is also agreed, that this policy shall become void, if any other insurance is or shall be made upon the vessel interest hereby insured, which, together with this insurance, shall exceed the sum of eleven thousand dollars." In the fall of 1875 the vessel was wrecked in the upper lakes. An expedition was sent to her immediately by the agent of the insurance companies, but was unsuccessful in getting her off. Perew paid 5-27ths of the contribution of the vessel in the general average to the expenses of that expedition, the insurance companies paying 22-27ths, under a clause in the policies which authorizes the insurers to recover the vessel, in case of loss or misfortune, and provides that they shall contribute to the expenditures according to the proportion the sum insured bears to the valuation aforesaid, and that the rest paid or incurred by them shall be a lien on and recoverable against the vessel, or against the insured, at the option of the insurers. Thereafter, the vessel was regarded by Perew and the insurers as a total loss. He gave to them notice of abandonment on the 7th of December, 1875. His right to abandon was recognised under a clause in the policy which provides that "the insured shall not have a right to abandon the vessel in any case, unless the amount which the insurers would be liable to pay under an adjustment as of a partial loss, shall exceed half the amount insured." On the 7th of February, 1876, he signed and delivered to each company an instrument in writing, which says: "I, Frank Perew, owner of the schooner Mary E. Perew, insured under policy" of such a number, in such a company, for so much, of such a date, "do hereby abandon to said company all right, title and interest possessed by me in said vessel, tackle and apparel, under said policy, notice of said abandonment having been given December 7th, 1875." The four companies accepted the abandonments, and each paid to Perew, as for a total loss of the vessel, the amount it had insured, the total amount he received from them being $11,000. Afterwards they sent out an expedition and got the vessel off and brought her to Buffalo. So far as appears, Perew had not paid, or been called on to pay, any part of the expense of this successful expedition. The insurance companies procured the repairs to be made for which this suit is brought. No defence was made to the suit by any one but Perew. The district court decreed for the libellants and Perew has appealed to this court.

The contention on the part of Perew is, that he abandoned to the insurance companies only 22-27ths of the vessel; that he owned 5-27ths of her when the repairs were made; that the repairs were made without his consent; and that her co-owners could not bind his interest in the vessel by procuring the repairs to be made. If, by the abandonments, Perew ceased to have any interest in the vessel, that disposes of the case, for he has no standing to be heard in defence.

The argument on the part of Perew is, that the insurance companies, by the abandonments, became the owners of only a so-called insured interest in the vessel, namely 22-27ths, because the insurance was only $11,000 on a valuation of $13,500, and that they did not thereby become the owners of a so-called uninsured interest, namely 5-27ths, as to which Perew took the risk himself, and that he retained that, after and notwithstanding the abandonments. This is an erroneous view. Authorities are cited to the effect that, by an abandonment, the assured transfers his insurable interest as far as it is a subject of the policy; and that an abandonment

cannot transfer the interest of the assured any further than that interest is covered by the policy. But there is nothing in those well settled principles which upholds the claim made by Perew. Perew's insurable interest in the vessel was the whole vessel, which he owned, and it was the whole vessel which was insured and was the subject of the policy. If he had owned only an undivided half of the vessel, his insurable interest in the vessel would have been only an undivided half of the vessel, and the subject of the policy, while it could not have exceeded an undivided half of the vessel, might have been only an undivided quarter of the vessel. In such case, the abandonment would have been of only an undivided quarter of the vessel. So, if the interest covered by the policy was only an undivided half of the vessel, no more than the undivided half of the vessel could be transferred by the abandonment. But, where the interest covered by the policy is, as here, the whole vessel, the abandonment can transfer the whole vessel. The interest covered by the policy is not to be confounded with the extent of the insurance made on such interest. In the present case, the interest covered by the policy, or the subject of the policy, was the entire interest in the vessel, or the whole vessel, and not an undivided share of the vessel. Perew owned the whole vessel, and the policy states that the company, "on account of Frank Perew, do make insurance, and cause" so much "to be insured, upon the body, tackle, apparel and other furniture of the schooner called the Mary E. Perew." The entire interest in the vessel, or the whole vessel, was valued in the policies at $13,500. That interest, that is, the whole vessel, was insured for $11,000. The companies put at risk on the whole vessel $11,000. If she was totally lost, they were to pay, and Perew was to receive, only $11,000, although, if not lost, he might have sold her for $13,500. An insurance company will not insure a vessel to her full value, lest there may be a temptation to the insured to make a good sale of her by losing her. In this case, the extent of the insurance on the whole vessel was $11,000, but the policies covered the whole vessel, as the interest insured or the subject of the policy. When the policy speaks, in the clause above cited, of "the vessel interest hereby insured," it means that the insurance shall not exceed $11,000 on that interest which is spoken of in the commencement of the policy as the interest insured, that is, the whole vessel. The clause providing that the company shall contribute to the expenditures of recovery according to the proportion the sum insured bears to the valuation of $13,500, taken in connection with the provision that the valuation of $13,500 shall be considered the value in adjusting losses covered by the policy, shows a harmony with the foregoing views. If the expenditures of recovery were $3,000, the companies, insuring $11,000, would pay $2,444.44. If the damage, in case of loss, was one-quarter of the value of the vessel, it would be one-quarter of $13,500 or $3,375, and the companies, insuring $11,000 on the whole vessel, would pay $2,750. On the theory that the companies insured only 22-27ths of the vessel, they would be insuring up to the full value of the subject insured, for they would be insuring $11,000 on $11,000, 22-27ths of $13,500 being $11,000.

Moreover, the terms of the abandonment are very distinct. Perew, owner of the whole vessel, insured under the policy for so much, abandons to the company all right, title and interest possessed by him in the vessel, tackle and apparel, under the policy. The instrument declares that he is owner of the whole vessel, that the whole vessel was insured under the policy for the amount of insurance named in the policy, and that he abandons to the company all the right, title and interest possessed by him in the vessel, under the policy. The right, title and interest possessed by him in the vessel was the entire interest in the vessel, the whole vessel. He could not abandon all of that by abandoning only a part of it. He abandons under the policy, that is, in accordance with the provisions of the policy respecting abandonment, all his interest in the vessel, that is, the whole vessel. He does this to get payment for a total loss. He was satisfied that the vessel was in such a state that it was better for him to receive the $11,000 and give up the vessel wholly to the companies, and they met him on that ground. The instruments of abandonment carry out the provision of the policies. They were accepted by the companies, and they convey to the companies "an unincumbered and perfect title to the subject abandoned." The subject abandoned is the vessel, the whole vessel, all the interest of Perew in the vessel as owner of her, the entire ownership of her.

As Perew had no interest in the vessel when the libel was filed, he was not entitled to defend the suit, and the libellants are entitled to a decree for $4,021.93, with interest from October 12th, 1877, and for their costs in the district court. They are also entitled to their costs of appeal, in this court, against Perew.