## THE MANITOBA.[1]

NORTHWEST TRANSP. Co. and others *v.* THE MANITOBA.

*(District Court, E. D. Michigan.* February 9, 1887.)

1. MARINE INSURANCE—ABANDONMENT—PARTIAL AND TOTAL INTEREST IN PROPERTY INSURED.

When the interest insured is that of a part owner, or when the entire owner insures some definite part, an abandonment is limited to a cession of the insured interest; but, when the insurance reaches every part of the ownership indiscriminately, an abandonment will extend to the entire property, though its value exceeds the amount of the insurance.

2. SAME—EXPENSES INCURRED UPON ABANDONMENT.

It is contrary to the idea of a lien that one should acquire it on his own property. While the abandonment relates back to the date of loss, this relation takes place for the protection of the underwriters, and cannot be used as a means of enabling the owners to obtain a lien for services that they were bound to render before abandonment.

In Admiralty. Distribution of proceeds. Hearing on petition.

*Mr. Canfield,* for the transportation company.

*Mr. Swan,* for the insurance companies.

SEVERENS, J. In this case a very full and elaborate argument was had by counsel at the bar, and also upon briefs which have been furnished, and I acknowledge the satisfaction which the court has in the completeness and thoroughness with which the case has been presented, and the assistance thereby furnished.

The facts in the case are, as they are presented to me upon this hearing, that the steamer Manitoba, belonging to the Northwest Transportation Company, in the year 1883 was insured by four separate insurance companies, under four several and independent policies,—one issued by the Union Insurance Company for the sum of $10,000, another by the Continental Insurance Company in the sum of $10,000, another by the Thames & Mersey Insurance Company in the sum of $7,500, and another in the Insurance Company of the State of Pennsylvania in the sum of $3,350; the total amount of insurance being $30,850. The steamer was valued in each of these policies at $36,000. The limit of the insurance permitted was $30,850, being the precise amount for which she was in fact subsequently insured. Thus one-seventh of the valuation fixed in the policies was left uninsured. While so insured, she met with a disaster, and was stranded on the shore of Lake Huron, in the harbor of Southampton. While so stranded, efforts were made to release the steamer both by the owners and underwriters, and considerable expense was incurred thereby; but, being unable to get her off, the owners subsequently abandoned her to the underwriters. Without an actual acceptance of the abandonment, the underwriters, during the following spring, succeeded in releasing the steamer, and brought her to Detroit, but refused

[1]Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

to pay the loss, and suits were thereupon commenced against the several underwriters by the owners of the steamer, which resulted in judgments for the owners, and these judgments have since been paid. It is proper to state, in this connection, that the main subject of controversy in these suits, one of which was in this court, (24 Fed. Rep. 171,) and others in the state circuit court, from which they were ultimately taken to the state supreme court, (26 N. W. Rep. 336,) was whether the abandonment was sufficient, and it turned upon the construction of the notice of abandonment given by the insured to the underwriters, taken in connection with some circumstances touching the ownership of the vessel; but it was held, not only in this court, but in the state supreme court, that the abandonment was effectual, and so that the owners of the vessel acquired a position in which they were entitled to recover from the underwriters as for total loss.

After the steamer was brought to Detroit she was libeled by the owners of the tug John Martin for salvage services in her rescue, and under that libel a decree was entered, and the steamer sold, and the proceeds paid into court. There now remains in the registry of the court about $4,000, after paying the amount of the salvage decreed, and some other intervening claims. The owners and the several insurance companies have filed their petitions asking for a distribution of this surplus. The petition on behalf of the owners set up a claim for one-seventh of the proceeds, upon the ground that, notwithstanding the abandonment, they still remained the owners of a one-seventh interest in the vessel. It will be seen from this statement that the position of the owners of the vessel is that it was a consequence of the insurance of the vessel by the owners to the extent permitted, and which was in fact made for a less sum than the value, that the owners of the vessel stood in relation to it as insurers of that one-seventh interest on their own account; and in this case the owners of the vessel claim—*First*, that they are entitled to recover out of these proceeds a one-seventh part, being a proportionate amount of the total valuation of the vessel for which they remained uninsured; or, *secondly*, they claim, if this position is not sound, then that they are entitled to recover for the amount of the salvage services which they rendered in attempting to rescue the vessel after she was stranded, and this upon the ground, which must be fundamentally assumed, that the effect of the abandonment was to relate back to the date of the loss, and so vest the insurers with a complete title to the vessel from the date of the loss, and so convert the insured into salvors, acquiring a lien by virtue of these services upon the vessel.

From this statement it will appear that the first question arises upon the force and effect of the abandonment,—whether it is in law of the proportionate interest represented by the ratio of the insurance to the entire valuation of the vessel, or is of the entire property of the insured party in the thing insured. It is undoubtedly true that when the interest of the insured is partial only,—of one-half of some definite fractional interest,—or in the nature of a lien or other qualified interest, the insurance thereon does not extend to or affect the other interests which

the insured does not own; or, if an owner of a vessel, or of the entire interest in the cargo, as the case may be, effects an insurance upon some fractional interest, as of one-half, without insuring his other one-half interest, in every such case the abandonment would not be the cession of the entire property in the thing, but only of the interest insured. The abandonment is co-extensive with the interest insured, and is of the very essence and substance of the thing covered by the insurance. The doctrine of giving such qualified effect to abandonment in such cases has a clear application to the cases above instanced; but it is claimed on the part of the owners of the vessel in this case that, where the valuation of the ship or cargo is put in the policy at a sum which leaves a margin over and above the amount of the insurance allowed, the owner is regarded by the law of marine insurance as his own insurer of the aliquot part represented by the margin, and of course on the same footing, in case of loss, as the other insurers; that this case is not considered as an absolute abandonment; and that the owner is entitled, on account of his interest, to share in the salvage in case anything is saved. This seems to be the doctrine of the continental writers; and Emerigon, Pothier, and Boulay-Paty all declare that the effect of abandonment in such cases, also, is only to surrender to the insurers the proportionate interest in the property which the amount of insurance bears to the total valuation. This doctrine has been followed in this country in at least three cases,— the case of *Insurance Co.* v. *Duffield*, in the superior court of Cincinnati, where the opinion was delivered by Judge GHOLSON, 2 Handy, 122, and in 4 Amer. Law Reg. 662; another case, the *Cincinnati Ins. Co.* v. *Duffield*, in 6 Ohio St. at page 200, and which, if I recollect right, grew out of the same disaster; and also the case of *Phillips* v. *Insurance Co.*, 11 La. Ann. 459.

There is a passage in 2 Arnold on Insurance, (page 1159,) which gives color to the same theory. On the contrary, Mr. Phillips, in his work on Insurance, (Volume 2, p. 238, being section 1499,) and Parsons on Marine Insurance, (Volume 2, p. 194,) as I understand them, only affirm the rule as applicable to the cases of a partial or qualified ownership in the thing insured. And in the case of *Cincinnati Ins. Co.* v. *Bakewell*, 4 B. Mon. 541, and the case of *The Mary E. Perew*, 15 Blatchf. 59, and the case of *Mutual Safety Ins. Co.* v. *Cargo of The George*, Olcott, 89, where the question now involved came directly before the court for decision, the application of the rule to the case of an owner of the entire property which is insured in a sum less than its valuation was expressly denied, and I am satisfied that these last decisions are in accordance with the general understanding prevalent in this country; and I might also add that two of these cases being in the federal court, and being direct adjudications upon the very point in controversy, one of them being decided by so experienced and able a judge as Judge BLATCHFORD, they undoubtly should have in this court a consideration, and be given effect, especially on that account.

The contrary doctrine would introduce an anomalous feature into the proceeding. There never would in practice be such a thing as a total

abandonment to the insurer, since an insurance is not permitted to the whole value. The owner, after the cession, would stand in the same relation to the vessel or cargo or other thing insured as the underwriter, and should be required to make the same effort towards rescuing the thing abandoned, and, if the thing should be saved by the efforts of the underwriters, the owners should contribute towards the expenses incurred; but, as a matter of practice, and according to the general understanding, no such thing is expected or occurs.

I think that a correct statement of the law on the subject is that where an insurance touches only a definite interest in the thing insured, as that of a part owner, or where the entire owner of the property insures some definite part, or where the insurance is for the benefit of a lienholder, as a mortgagee, the abandonment, in case the right to make it accrues, extends only to the partial interest so insured; but that when the insurance, though not of the whole value, yet reaches to every part of the entire ownership, and rests upon all the substance of that ownership indiscriminately, an abandonment extends to the whole interest, for that, within the meaning of the rule, is the subject of the insurance.

The case in 9 Cush. 305, (*Rice* v. *Cobb*,) which was somewhat relied upon on the argument in behalf of the owners of the vessel, illustrates this subject by a very pertinent example. In that case the property had been mortgaged as to a one-half interest, and subsequently it was mortgaged as to the entire interest to a second mortgagee. The second mortgagee, upon an occasion happening justifying it, abandoned the vessel, or made such an abandonment as the law requires, to the underwriters; and the question was to what extent that abandonment went, and what interest was ceded by the abandonment. The court held, and, as it would seem, very reasonably, that the effect of the abandonment was only to transfer to the insurers the rights of the second mortgagee; that it would not and could not, in the nature of things, be an abandonment of the entire interest in the property; for that the insured did not own,—had no title to. And it was to the language of the court as applied to the state of things, so circumstanced, that reference was made upon the argument. But, when we consider the subject to which this language relates, we will see that the court had in mind the effect of an abandonment by one who is insured for an interest partial only in the property.

There is, as will be seen from this statement, point-blank contradiction in the authorities on this question. It is one of a great deal of interest, and it is very likely, and indeed it is desirable, that this question might be further considered, if the parties think it worth while, upon an appeal to the circuit court.

There is less difficulty in regard to the second branch of the case, which is whether, conceding the abandonment to be of the entire ownership in the vessel, and on account of the relating back to the date of the loss, so as to give title in the thing lost from the date of the loss to the insurers, the owners could be regarded as salvors, and have a lien for the amount of expenses incurred in attempting to rescue the vessel? In the

*first* place, it is contrary to the idea of a lien that one should acquire it on his own property. It is seen that, at the time when these services were rendered, the owner still retained dominion of the thing, and still asserted ownership of the entire property in the vessel. *Secondly,* the relation of an owner to his own property prevents his acquiring a lien upon it as a salvor. All connected with the vessel are bound to use the utmost diligence and the most strenuous endeavor to save the vessel from peril, and for doing this there can be no salvage. It is true, as contended, that the abandonment relates back to the date of the loss, and vests the insurers with the title as of that date. This was so held expressly in the case in 1 Curt. 343, (*The Ann C. Pratt.*) This relation takes place only for the protection of the underwriters, and does not derogate from the title that is transferred by the abandonment, which is of all the substance insured, with the incidents adhering to that subject. Again, it was expressly stipulated in these policies that the insured should before abandonment use their strenuous endeavors to save the ship from destruction. The services rendered were such as this express obligation requires. It is impossible that now, after those efforts have been given over as unavailing, and the vessel abandoned to the insurers, these services should be converted into a salvage lien.

I think that the result must be that the order for distribution in this court of these proceeds must be that the insurers are entitled to them.